ROBERT C. SCHUBERT (S.B.N. 62684)
(rschubert@sjk.law)
AMBER L. SCHUBERT (S.B.N. 278696)
(aschubert@sjk.law)
**SCHUBERT JONCKHEER & KOLBE LLP**
Three Embarcadero Center, Suite 1650
San Francisco, California  94111
Telephone:   (415) 788-4220
Facsimile:   (415) 788-0161

*Counsel for Plaintiff Martin*

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

## EASTERN DIVISION

| | |
|---|---|
| SHAKIRA MARTIN, individually and on behalf of all others situated,<br><br>     Plaintiffs,<br> v.<br><br>SAMSUNG ELECTRONICS CO., LTD and SAMSUNG ELECTRONICS AMERICA, INC.,<br><br>     Defendants. | Case No. 5:22-cv-01607<br><br>**CLASS ACTION COMPLAINT**<br><br>**CLASS ACTION**<br><br>**DEMAND FOR JURY TRIAL** |

**Class Action Complaint**
**Case No. 5:22-cv-01607**

Shakira Martin ("Plaintiff") brings this consumer class action against Defendant Samsung Electronics Co., Ltd., a South Korean corporation, and Defendant Samsung Electronics America, Inc., a Delaware corporation (collectively referred to as "Defendants," "Samsung," or the "Company"), for misleading consumers about the performance of certain Samsung Galaxy devices. Plaintiff's allegations are based upon personal knowledge as to her own acts and upon her investigation, the investigation of counsel, and information and belief as to all other matters. Plaintiff, on behalf of herself and all others similarly situated, alleges as follows:

## INTRODUCTION

1.      This is a class action brought on behalf of purchasers of Samsung Galaxy devices ("Devices"), including but not limited to models S10, S20, S21, and S22 and versions "FE," "Plus," and "Ultra" (collectively referred to as "Devices"), sold by Defendants Samsung Electronics Co, Ltd. and Samsung Electronics America, Inc.

2.      As alleged herein, the Company utilized a Samsung application called Game Optimizing Service ("GOS"), which effectively slowed down or "throttled" the performance of over 10,000 applications, including Instagram, Facebook, YouTube, TikTok, Amazon, Twitter, Netflix, DisneyPlus, and Microsoft Office. However, popular "benchmarking" applications—which are tools that allow consumers to compare the performance of various smartphones and verify smartphone manufacturer's claimed performance—were not throttled by GOS. Accordingly, Samsung falsely represented the Devices true speed, performance, and battery life. The Company did not disclose this to consumers upon purchasing the Devices.

3.      Instead, Samsung continued to tout the "smooth, high-quality performance" and "powerful, intelligent battery" of its Devices, despite knowing that its performance claims were based on false and deceptive benchmarking

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

**Class Action Complaint**
**Case No. 5:22-cv-01607**                                                    **1**

metrics. By advertising the performance statistics garnered from popular benchmarking applications, Samsung was able to manipulate purchasers into buying expensive products that did not in fact operate at the claimed high performance.

4.      In deciding to purchase her Samsung Galaxy S21, Plaintiff believed and relied on statements made by Samsung regarding the devices' alleged speed and performance and ultimately purchased the device due to its allegedly superior speed, battery life, and overall performance.

5.      Plaintiff and the Class (as defined below) have suffered damages as a direct result of the Company's false and disingenuous marketing, advertising, and packaging of the Devices. Samsung's misrepresentations and omissions violate California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*, and the Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 *et seq.*

## PARTIES

6.      At all relevant times, Plaintiff Martin has resided in Victorville, California. Martin purchased the Samsung Galaxy S21 on June 15, 2021 at the Spectrum Charter store in Victorville, California (14400 Bear Valley Rd unit 109, Victorville, CA 92392). Upon purchasing the smartphone, a representative at the Spectrum charter store set up Martin's phone for her from start to finish. At no time during this process did Martin agree to Samsung's terms and conditions, and to the extent those terms and conditions may have included an arbitration agreement, Martin did not agree to it. When the Spectrum representative handed Martin her new Samsung Galaxy S21 smartphone, it was already fully set up.

7.      In deciding to purchase her Samsung Galaxy S21, Martin believed and relied upon Samsung's statements stating that the "5nm processor" was the "fastest processor ever." This statement, touting the elite performance and speed of the Samsung S21, was prominently listed on Samsung's website and was material to Plaintiff Martin.  Martin also watched many product reviews on YouTube that

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

compared the Apple iPhone to the Samsung Galaxy S21. She purchased the Device because, based on Samsung's representations about the Galaxy S21 smartphone's speed and performance, she believed that the Samsung Galaxy S21 had a faster processing speed and superior performance.

8.     With Martin's June 15, 2021 purchase, she switched from an Apple device to the Samsung Galaxy S21, believing the Samsung Galaxy S21 would provide her with an upgraded performance and quicker speed. However, shortly after purchasing her Samsung Galaxy S21, Martin discovered that this smartphone's performance frequently lagged and it was not working as fast as she expected. Martin reached out to the Spectrum Charter store and submitted a warranty claim, but she only received the same exact phone in the mail. The replacement Device did not resolve her issues concerning the smartphone's speed and performance.

9.     Martin purchased and paid substantially more for her Galaxy S21 than she would have if she had known the truth about the Devices. Martin has suffered actual damages in the form of her overpayment for the Device, which she purchased as a result of Samsung's misrepresentations and omissions. Samsung did not inform Martin of the truth about its throttling manipulation of the Devices, resulting in reduced speed, performance, and battery life. Had Martin known that Samsung manipulated the performance of its Devices through throttling, she would either not have purchased the Device or would have paid substantially less for it. At present, Martin has concerns about purchasing a Device for herself and she does not know whether it will continue to be throttled and whether Samsung's advertising will continue to be false and misleading. In the future, Martin would pay a premium for a Samsung Device if it did, in fact, offer the speed and performance that Samsung promised. In addition to restitution, Martin also seeks injunctive relief to enjoin Samsung from continuing to manipulate its Devices through throttling and continuing to mislead her and other consumers through its advertising.

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

10.　　Defendant Samsung Electronics Co, Ltd. is a South Korean corporation, with its corporate headquarters at 129 Samseong-ro Yeongtong-gu Gyeonggi-do 16677 Suwon-Shi Korea. Defendant Samsung Electronics Co, Ltd. serves as the umbrella company in which Defendant Samsung Electronics America, Inc. functions under. Defendant Samsung Electronics Co, Ltd. produces an extensive assortment of consumer and industry electronics, including mobile phones, laptops, televisions, appliances, memory chips, semiconductors, and integrated systems.

11.　　Defendant Samsung Electronics America, Inc. is a Delaware corporation, with its corporate headquarters located at 85 Challenger Road Ridgefield Park, New Jersey 07660. Samsung Electronics America, Inc. manufactures electronic products, including cell phones, computers, storage devices, home appliances, security systems, televisions, and smartwatches.

12.　　Defendants Samsung Electronics Co, Ltd. and Defendant Samsung Electronics America, Inc. are collectively referred to as "Defendants, "Samsung," or the "Company."

## JURISDICTION AND VENUE

13.　　This Court has original jurisdiction over this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because at least one class member is a citizen of a state other than that of Defendants, and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs.

14.　　The Court has personal jurisdiction over Defendants pursuant to 18 U.S.C. § 1965(a) because Samsung was engaged in the marketing and selling of Devices in the State of California, and Plaintiff purchased her Samsung device from a store in California.

15.　　This Court has personal jurisdiction over the Plaintiff because Plaintiff submits to the Court's jurisdiction.

16.　　Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the violations of law

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

occurred in this District, and Defendants are subject to personal jurisdiction in this District.

**FACTUAL ALLEGATIONS**

**A. The Smartphone Market**

17.     Samsung Electronics Co, Ltd. is headquartered in South Korea and is a subsidiary of the multinational Samsung Group conglomerate that has auxiliaries in a myriad of varied industries, including consumer electronics, construction, defense, aerospace, and shipbuilding. Samsung Electronics Co, Ltd operates five divisions, including Samsung Mobile. Samsung Mobile independently operates four divisions, including Consumer Electronics, Information Technology and Mobile Communications, Device Solutions, and the Research and Development Center. The Information Technology and Mobile Communications division produces and sells mobile devices, computers, and digital cameras.

18.     Attesting to the company's extensive influence in the expanding smartphone market, Samsung Electronics Co, Ltd. reported $72 billion in smartphone sales globally in 2021.[1] In 2021, the Company shipped over 270 million smartphones, which was the highest number of shipments from any smartphone manufacturer in that year. Combined, Apple Inc. ("Apple") and Samsung make up close to 40% of the still-expanding global smartphone market. Currently, over 80% of the world's population owns a smartphone.

19.     In the United States, the smartphone market mirrors the growth seen worldwide. There are currently over 290 million smartphone users in the United States, with approximately 80% of them owning either an Apple or Samsung device, according to a study published by Statistica. Apple's iPhone is the most popular smartphone in the United States, with over 50% of United States subscribers using an Apple device as of 2021. Samsung's Galaxy smartphones are the second most

---

[1] https://www.statista.com/statistics/299144/samsung-smartphone-shipments-worldwide/

**Class Action Complaint**
**Case No. 5:22-cv-01607**                                                        **5**

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

popular, with over 25% United States subscribers as of 2021. Since the introduction of the Samsung Galaxy S10 product line in 2019, the Samsung Galaxy S line has been one of Defendant's main product lines.

20.     The introduction of the Samsung Galaxy S10 series in February 2019 boosted the Company's sales due to improvements including the 'Infinity-O Display,' a bigger battery, and more megapixels. The Company's website states that the Galaxy S10 "redefines the Galaxy S style, creating a new standard" and specifically touts its "longer-lasting battery" due to the phone's ability to "intelligently (learn) your App usage patterns to maximize battery performance and efficiency." The Samsung Galaxy S10 series was also the first version of Samsung Galaxy S phones that was impacted by the GOS benchmark manipulation.

21.     Since the announcement of the Samsung Galaxy S10 in 2019, the Company has also released the Samsung Galaxy S20 series, the Samsung Galaxy S21 series, and the Samsung Galaxy S22 series, all of which have had their performance manipulated by the GOS benchmarking application.

22.     The following table outlines the Samsung Galaxy S devices known to be affected by the GOS benchmarking manipulation, as well as the date they were announced and approximate retail price. The following list is not all-encompassing and may be further developed upon discovery.

| Device | Date Announced |
|---|---|
| Samsung Galaxy S10 | February 20, 2019 |
| Samsung Galaxy S10 Plus | February 20, 2019 |
| Samsung Galaxy S10 Ultra | February 20, 2019 |
| Samsung Galaxy S10 FE | January 3, 2020 |
| Samsung Galaxy S20 | February 11, 2020 |
| Samsung Galaxy S20 Plus | February 11, 2020 |

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

| Samsung Galaxy S20 Ultra | February 11, 2020 |
| Samsung Galaxy S20 FE | September, 2020 |
| Samsung Galaxy S21 | January 14, 2021 |
| Samsung Galaxy S21 Plus | January 14, 2021 |
| Samsung Galaxy S21 Ultra | January 14, 2021 |
| Samsung Galaxy S21 FE | January 3, 2022 |
| Samsung Galaxy S22 | February 9, 2022 |
| Samsung Galaxy S22 Plus | February 9, 2022 |
| Samsung Galaxy S22 Ultra | February 9, 2022 |
| Samsung Galaxy S22 FE | TBA |

**B. Samsung's Deceptive Performance Manipulation**

23.     Benchmarking applications are programs that conduct a sequence of uniform tests on smartphone processors and time how long it takes for them to finish the functions. Benchmarking quantitatively determines how a specific smartphone is performing relative to other devices on the market—smartphones that perform the tests at quicker speeds receive higher scores. Popular Android and iOS benchmarking applications include Geekbench, GFXBench, 3DMark, AnTuTu, PCMark, and GFXBench.

24.     Online reviewers and bloggers use these benchmarking applications to run tests and evaluate, compare, and rank various smartphones. Samsung is attentive to the fact that benchmark testing is a common measurement of smartphone performance and plays a critical role in reviewers' overall analysis of Devices. Samsung is also well-aware that purchasers rely on online reviews and blogs to compare the performance of various smartphones and verify smartphone manufacturer's claimed performance.

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

25.     Reports that Samsung was deceptively manipulating its Devices' performance came to the forefront of consumer attention on or about March 2, 2022, a few weeks after the introduction of the Galaxy S22 series. Reports emerged that the Defendant pre-installed Samsung application GOS onto some of its Devices, which effectively slowed down or "throttled" the performance of over 10,000 applications, including Instagram, Facebook, YouTube, TikTok, Amazon, Twitter, Netflix, DisneyPlus, and Microsoft Office.

26.     However, popular benchmarking applications were not throttled by GOS and therefore, when utilized by outside sources to determine the Devices performance, Samsung falsely represented the Devices true speed, performance, and battery life. The Company did not disclose its throttling manipulation to consumers.

27.     When a smartphone user opens any application on the Devices, the GOS application processes and identifies each application based on its name and then determines whether to throttle the application's performance.

28.     YouTube user 네모난꿈 posted a video[2] on February 25, 2022 that highlights Samsung's intentional throttling of non-benchmarking applications, while leaving benchmarking applications alone to operate at full speed. The user's video reveals a side-by-side performance scores of the same application with two different names. The user first ran a performance test for a common benchmarking application called 3DMark, which was not throttled by the Samsung Galaxy device, then changed the name of this application to popular game "Genshin Impact," which is on the list of applications throttled by Defendant.

29.     Even though it was the exact same application, the retitled application had a notably lower benchmark score and average frame rate, reducing its overall score from 2618 to 1141. Other users have also performed these tests with the same outcome.

---

[2] https://www.youtube.com/watch?v=Vtt2g3BlwM8

30.     Applications deliberately throttled by Samsung operate at an exponentially slower speed than non-throttled applications. Thus, because Samsung programmed GOS to slow down the performance of non-benchmarking applications, but not influence the performance of benchmarking applications, the Devices function quicker when they identify benchmarking applications. Thus, Samsung intentionally took measures to advertise the Devices as though the performance of non-throttled benchmarking applications represents the performance of the Devices across the board, which intentionally misled Device purchasers.

31.     Employing power-saving features to improve performance and prevent overheating is not a new practice for smartphone manufacturers, including Samsung. In fact, on February 7, 2014, Plaintiff Daniel Norcia filed a class action complaint against the same Samsung defendants for having "intentionally misled the public in order to boost sales of the flagship Galaxy S4 smartphones." The Galaxy S4 was introduced in late April 2013. Plaintiff Norcia claimed that Defendants intentionally boosted the performance of popular benchmarking applications to artificially increase the S4's marked speed. Plaintiff Norcia relied on Samsung's false perception about the Galaxy S4's speed and performance. Thus, Samsung's conduct is not an isolated incident. It is a recurring pattern of intentionally misleading its customers about the speed and performance of its Devices.

**C. News of Samsung's Deceptive Throttling Emerges**

32.     Sparking the most recent public controversy, on March 2, 2022, Twitter user GaryeonHan tweeted the following statement, along with a list containing 10,000 applications allegedly subjected to Defendant's throttling:

> Samsung created an app called GOS and used the app to limit game performance, making the gaming experience worse. However, according to what the Korean community found out today, Samsung confirmed that it has put performance limits on more than 10,000 apps… that we use in our daily life, not just games. Importantly,

**Class Action Complaint**
**Case No. 5:22-cv-01607**                                                              **9**

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

we confirmed that benchmarking apps such as
Geekbench and 3dmark were not included in the list.
This is a kind of scam.

33.     On March 3, 2022, Samsung responded to the controversy and consumer outrage on Twitter, in Korean. The following translation to English was effectuated by Twitter user Dohyun Kim:

Hello. It's Samsung. We are constantly trying to expand the option for users and provide the most optimized performance converging customers' opinions. GOS (Game Optimizing Service) of the Samsung Galaxy S22 Series is pre-installed for optimizing the performance of CPU and GPU to prevent excessive heating when playing a game for a long time. To meet the recent needs of various customers, it is planned to update the Game Booster lab to provide an option to prioritize the performance, as soon as possible. Afterward, we will try our best for customers' satisfaction and safety by listening to their opinions. Thank You

34.     Samsung spokesperson Kelly Yeo also told news outlet The Verge:

Our priority is to deliver the best mobile experience for consumers. The Game Optimizing Service (GOS) has been designed to help game apps achieve a great performance while managing device temperature effectively. GOS does not manage the performance of non-gaming apps. We value the feedback we receive about our products and after careful consideration, we plan to roll out a software update soon so users can control the performance while running game apps.

35.     On March 4, 2022, Geekbench announced in a series of tweets that they had delisted Samsung Galaxy S10, S20, S21, and S22 from their browser.

**Class Action Complaint**
**Case No. 5:22-cv-01607**                                                          **10**

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

Earlier this week, we were made aware of Samsung's Game Optimizing Service (GOS) and how it throttles the performance of games and applications. GOS decides to throttle (or not to throttle) applications using application identifiers and not application behavior.

We view this as a form of benchmark manipulation as major benchmark applications, including Geekbench, are not throttled by this service.

After extensive internal testing we have determined the following Samsung Galaxy handsets use GOS:
- Samsung Galaxy S22 (all models)
- Samsung Galaxy S21 (all models)
- Samsung Galaxy S20 (all models)
- Samsung Galaxy S10 (all models)

Today we delisted these handsets from the Android Benchmark chart on the Geekbench Browser.

36.     On March 7, 2022, Samsung released another public statement on their website, stating:

The Galaxy S22 series' GOS (Game Optimizing Service) is a service that monitors the phone's status and provides the optimal status to prevent stuttering, excessive performance degradation, and power consumption when running game apps.

Respecting the needs of our customers, we have lifted the initial performance limit even for high-end games and improved it so that you can use the CPU/GPU to the maximum.

In addition, a game performance management mode has been added to further improve product performance.

**Class Action Complaint**
**Case No. 5:22-cv-01607**                                                    **11**

37.     Moreover, Samsung was motivated to amplify their smartphones' marketable performance because, unlike its main competitor, Apple, Samsung does not have its own mobile operating system ("OS"). Apple designed, developed, and continues to update its own operating system called iOS, which is exclusively for Apple hardware. iOS was initially introduced in 2007 and allows Apple to separate itself from competitors.

38.     Samsung, on the other hand, uses the Android OS for all its Galaxy smartphones, just like over 70% of all Android manufacturers. Because Samsung's OS is not a point of differentiation between themselves and other products on the market, Samsung knows that to maintain competitiveness, every new smartphone must be exceedingly more sophisticated with its speed, battery life, and performance.

39.     Additionally, the iPhone's general performance still greatly outweighs the benchmarks of any Samsung Galaxy Device. In a January 21, 2021 article titled *Samsung Galaxy S21 benchmarks: Faster but still no match for iPhone 12,*[3] Tom's Guide concludes that the iPhone delivers the best overall smartphone performance after conducting cross-platform benchmarking tests:

> Fans of Android phones will be happy to know the Galaxy S21 lineup delivers the best performance we've seen from an Android phones… Upgrade from an older Android device, and you'll definitely notice a performance boost.
>
> But if you were hoping for a closer Android vs. iPhone showdown, think again. As good as the performance is on the Galaxy S21, the iPhone still delivers the best smartphone performance overall.

[3] https://www.tomsguide.com/news/samsung-galaxy-s21-benchmarks

**Class Action Complaint**
**Case No. 5:22-cv-01607**                                                        **12**

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

40.     In a February 12, 2020 article titled *Samsung prices cheapest new Galaxy smartphones at $1,000, even after Apple went lower on iPhone*,[4] Marketwatch writer Jon Swartz speaks to the diverging Apple and Samsung price strategies:

> Apple originally pushed the envelope by selling the iPhone X for a base price of $1,000 starting in late 2017, but created more of a range of prices in its most recent launch of the iPhone 11. The cheapest iPhone in the latest line from Apple started at $699, $50 lower than the lowest-price option in Apple's previous launch cycle.
>
> Samsung appears to be headed the other way, giving all of its new Galaxy line of smartphones a $1,000 price tag. Apple set revenue records in the holiday season thanks to the strength of its latest iPhone 11 offerings.

41.     Since comparable iPhone devices are outperforming Samsung Devices despite Samsung's performance manipulation, Samsung has an incentive to improve their marketed performance metrics to reclaim their competitive edge.

**D. Samsung Rebrands Galaxy Series with Samsung Galaxy S10**

42.     The Company's rebranding of its Galaxy S10 smartphone as a "ground-breaking" line[5] that stands apart from all other devices due to its new design, intelligent performance, and wireless power-share is manipulative due to its simultaneous introduction of the GOS application and throttling manipulation. The Samsung Galaxy S10 carried a significant price increase, with the base model of a new S9 listed at approximately $720 when initially released and the base model of a new S10 listed at approximately $900 when initially released. Samsung touts the

---

[4] https://www.marketwatch.com/story/samsung-makes-1000-the-cheapest-price-for-galaxy-smartphones-after-apple-went-lower-on-iphone-2020-02-11

[5] https://news.samsung.com/us/samsung-galaxy-s10-more-screen-cameras-unpacked-2019/

**Class Action Complaint**
**Case No. 5:22-cv-01607**                                                      **13**

speed and performance of this new line, even though the analogous specs are manipulative and erroneous. This harmful advertising continues with the successive Galaxy S lines.

43.     Comparing the Samsung Galaxy S10 with the Samsung Galaxy S9 in a February 24, 2019 article titled *Samsung Galaxy S10 Vs Galaxy S9: What's The Difference?,*[6] Forbes writer Gordon Kelly utilized Samsung's published specifications to report that "Samsung deserves a lot of credit. The full Galaxy S10 range is the big step-up customers wanted and they are worthy of their 10th-anniversary status."

44.     Forbes praised the upgrades in the S10's performance and battery life. Compared to the Samsung Galaxy S9, "Samsung promises a 29% boost to CPU performance and 37% boost to the GPU (in the Samsung Galaxy S10)." Additionally, Forbes stated that "having had the same battery capacity since the Galaxy S7 in 2016, improvements were well overdue and, thankfully, Samsung has delivered them."

45.     However, these positive reviews were based on Samsung's false and misleading benchmark scores as a result of its manipulation of the Devices' speed, performance, and battery life due to throttling.

46.     A smartphone's speed and performance are essential to its alleged functionality. An ordinary consumer would not be able to easily discern performance deficiencies in light of Samsung's misrepresentations of the Devices' alleged superiority. Accordingly, Samsung's deliberate use of GOS to throttle non-benchmarking applications is malicious and deceitful. But for Samsung's false and misleading advertising, a reasonable consumer would not have purchased the Devices or would have paid substantially less for them.

---

[6] https://www.forbes.com/sites/gordonkelly/2019/02/24/samsung-galaxy-s10-vs-galaxy-s9-whats-the-difference-should-i-upgrade/?sh=7a4ca6f66aa2

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

**E. Samsung Markets the Devices' High Performance, Speed, and Battery-Life**

47.    The U.S. smartphone market is dominated by two primary manufacturers, Apple and Samsung. Because Samsung claims that it manufactures one of the most efficient, user-friendly, and powerful smartphones, they can continue to sell the Devices and increase their prices despite misrepresented performance claims.

48.    Since popular smartphone blogs and websites use specifications from Samsung directly, as well as benchmarking applications that have been manipulated by Samsung's throttling, Defendants have skewed the primary sources of information describing the Devices' speed and performance.

**F. Samsung Galaxy S10**

49.    In a February 20, 2019, Samsung Newsroom U.S. press release titled *Samsung Raises the Bar with Galaxy S10: More Screen, Cameras and Choices,*[7] the Company announced the release of their "new line of premium smartphones," the Samsung Galaxy S10, and celebrated the ten-year mark since the launch of the first Samsung Galaxy S. The press release boasts about how Samsung engineered the Samsung Galaxy S10 to "meet the distinct needs of today's smartphone market," which specifically refers to the Galaxy S10's speed and gaming performance. As examples, the press release includes the following key points:

> **Speed:** Galaxy S10 gives you the capability to access next-generation Wi-Fi 6, which gives you prioritized and four times faster access over other users in crowded areas, like an airport. Experience lightning fast LTE for downloading and browsing capable of up to 2.0 Gbps for the first time ever.

---

[7] https://news.samsung.com/us/samsung-galaxy-s10-more-screen-cameras-unpacked-2019/

**Class Action Complaint**
**Case No. 5:22-cv-01607**                                                    **15**

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

**Gaming:** Engineered for the best possible gaming experience, the Galaxy S10 is built with AI-based on-device gaming performance optimization software and premium hardware including Dolby Atmos for gaming mode and a vapor chamber cooling system. Galaxy S10 is also the first mobile device to be optimized for games created on the Unity platform.

50.     On the website for its Samsung Galaxy S10 line, the Company touted the device's high performance and speed, stating that consumers can "browse at the speed of thought," "share epic posts in a flash," and "load sites and apps HyperFast with 5G and the Galaxy S10 5G's supernaturally fast processor." The website highlights the phone's "all-day intelligent battery," detailing its ability to "(optimize) usage based on how you live, to deliver an intuitive and energetic peak performance throughout the day."

51.     The website for the Samsung Galaxy S10 stated:

Business keeps getting faster every day and you need to be able to work anywhere—flexibly and collaboratively. With the Galaxy S10, you can do everything you need right on your phone as fast as you need to, and keep your company and personal data protected. Plus, customizable services make it easy to deploy, manage and update devices while on-the-go. Discover next generation mobile technology, productivity and security, all designed to enable next generation business to succeed.

52.     Many online media outlets reflected Samsung's resoundingly positive performance statistics.

53.     In an August 12, 2020 article titled *Galaxy S10 review: Still worth it, even with the Galaxy S20 out*,[8] Tom's Guide praised the Samsung Galaxy S10's

---

[8] https://www.tomsguide.com/us/samsung-galaxy-s10,review-6279.html

**Class Action Complaint**
**Case No. 5:22-cv-01607**                                        **16**

"blazing fast performance" and "Solid battery life with Wireless PowerShare" in reference to its tests using Geekbench 4's benchmarking metrics.

54.     In an October, 1, 2021 article titled *Samsung Galaxy S10 review: Finding the middle ground is hard*,[9] technology review website Android Authority utilized results from the 3DMark Sling Shot benchmark application to detail specific performance specs and concluded that "the Galaxy S10 is a killer phone that delivers near-perfect performance across the board."

55.     In an article titled *Samsung Galaxy S10 review*,[10] online technology news publication TechRadar stated:

> The Samsung Galaxy S10 is engineered and designed to be a conversation-changer, a phone that's crafted to turn everyone's yearly question of "Do I really need to upgrade?" into a more exclamatory "I really need to upgrade!"

**G.  Samsung Galaxy S20**

56.     Samsung unveiled the Samsung Galaxy S20 series in a February 12, 2020 press release titled *Introducing the Samsung Galaxy S20: Change the Way You Experience the World*.[11] In the press release, Defendants' touted the Samsung Galaxy S20's "entertainment" and "gaming" features, all of which were directly affected by Defendant's throttling manipulation, as follows:

> **Entertainment:** Taking advantage of the Galaxy S20's pro-grade camera, Netflix and Samsung are working together to put the Galaxy S20 in the hands of renowned directors to capture bonus content based on popular Netflix Originals. Users can also discover Netflix's best-

---

[9] https://www.androidauthority.com/samsung-galaxy-s10-review-968396/
[10] https://www.techradar.com/reviews/samsung-galaxy-s10
[11] https://news.samsung.com/global/introducing-the-samsung-galaxy-s20-change-the-way-you-experience-the-world

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

in-class content through an improved integration with Galaxy devices, enabling ease of content discovery and accessibility via Samsung Daily, Bixby, and Finder.

**Gaming:** The Galaxy S20 series takes mobile gaming to the next level. With a 120Hz display, you'll have the ability to experience incredibly smooth gaming. Later this spring, Samsung partner, Microsoft, will launch its popular Forza Street in the Galaxy Store, marking the first time the game is coming to mobile. Combined with a fast processor, 12GB of RAM7, audio tuned by AKG and a game booster working in the background to optimize settings for peak performance, the Galaxy S20 offers a powerful gaming experience.

57.   News outlets responding to the launch of the Samsung Galaxy S20 reflected the misleading performance statistics of Samsung's Devices. In a June 21, 2021 Android Authority article titled *Samsung Galaxy S20 review: What more could you want?*,[12] writer Robert Triggs touted the Samsung Galaxy S20's (regular) "top-tier performance, as well as its "all-day battery life":

As you'd expect from a modern flagship smartphone, performance is excellent even when multitasking in and out of several apps at once.

Without 5G technology on-board chugging down power, our 4G-only Samsung Galaxy S20 pushed through a full day of heavy use with capacity to spare. I couldn't wear the phone down with two and a half hours of Spotify, an hour of YouTube, two and a half hours of web browsing, messaging, and a decent camera session thrown in. Talk about impressive.

---

[12] https://www.androidauthority.com/samsung-galaxy-s20-review-1080674/

**Class Action Complaint**
**Case No. 5:22-cv-01607**                                                **18**

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

58.     April 26, 2022 Android Authority article titled *Samsung Galaxy S20 Ultra review: Too much of a good thing*[13] specifically featured the Samsung Galaxy S20 Ultra with glowing reviews—"good battery life," "solid gaming experience," and "blazing-fast performance"—and states the following about performance:

> The Samsung Galaxy S20 Ultra 5G is ultra-everything. While the device boasts an impressive display, rapid performance, and powerful cameras, the price tag is so high that the phone is unaffordable to many. If you need the very best Samsung phone, you're much better off with its more powerful, more stylish, and lower-priced successor, the Galaxy S21 Ultra.

## H. Samsung Galaxy S21

59.     On January 14, 2021, Samsung revealed the new Samsung Galaxy S21 in a press release titled *Samsung Galaxy S21 Ultra: The Ultimate Smartphone Experience, Designed To Be Epic In Every Way*, advertising the phone as "a flagship that pushes the boundaries of what a smartphone can do." Defendants advertised the Samsung Galaxy S21 as having "Performance and Protection You Can Count On." Samsung's press release explained that the Samsung Galaxy S21's new chip "offers faster speed, advanced computing and greater energy efficiency."

60.     On the website for its Samsung Galaxy S21, which was officially released on January 29, 2021, the Company continued to tout features related to the smartphone's speed, battery life, and overall performance. The website for the Samsung Galaxy S21 stated:

> Packing more speed, power and intelligence than ever, the 5nm processor is fast enough to keep up with the action, so you can do more even faster.

---

[13] https://www.androidauthority.com/samsung-galaxy-s20-ultra-review-1085702/

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

Witness the fastest chip ever in a Galaxy. With a 5nm processor on board, you get seamless multitasking and a hyper-fast content streaming.

61.     Online reviews for the Samsung Galaxy S21 continued to mirror the manipulated benchmarking applications statistics.

62.     In a January 29, 2021 article titled *Samsung Galaxy S21 review: A premium phone that's a great value,*[14] PCWorld touted the S21's "great performance and battery life." The article noted that "year-over-year improvement(s)" "matter less if you're coming from an S20 or even an S10, but upgrading from an S8 will be a noticeable improvement."

63.     In a May 4, 20222 article,[15] Expertreview.co.uk noted the Samsung Galaxy S21's "substantial performance uplift," detailing "50% faster multi-core processing speeds when compared against last year's Galaxy S20 in the Geekbench 5 benchmark."

64.     In the "Buy it if" section, Tech Radar stated:[16]

**(Buy it if…) You need one of the most powerful Android phones**
The Galaxy S21 offers some phenomenally good performance, and if you need a smartphone that can handle multiple tasks at once in split-screen view or when gaming this will likely be it.

**I.   Samsung Galaxy S22**

65.     Samsung unveiled the Samsung Galaxy S22 series in a February 10, 2022 press release titled *Introducing the New Samsung Galaxy S22 and S22+*

---

[14] https://www.pcworld.com/article/393998/samsung-galaxy-s21-review.html
[15] https://www.expertreviews.co.uk/samsung/1413129/samsung-galaxy-s21-review
[16] https://www.techradar.com/reviews/samsung-galaxy-s21-review

**Class Action Complaint**
**Case No. 5:22-cv-01607**                                               **20**

*Deliver Revolutionary Camera Experiences, Day and Night.*[17] In the press release, Defendant's touted the Samsung Galaxy S20's "Power and Performance That Keep Up With Your Life." The press release stated:

> From work to home, Galaxy S22 and S22+ are designed to power you through even the busiest days with the first-ever 4nm processor on a Galaxy smartphone. It powers our most advanced AI and ML processing to date, delivering unrivaled performance for all your streaming and productivity needs. What's more, network behavior analysis streamlines your app performance by automatically detecting which app you're using and directing the most power there — so streaming, surfing the web, and navigating apps have never been smoother.

> A lightning-fast processor demands power that can keep pace. Galaxy S22 is built with a robust all-day battery and 25W fast charging that never slows you down, and Galaxy S22+ features a super powerful battery that can last even longer than a day on a single charge. Galaxy S22+ also offers 45W super-fast charging, so you don't have to wait when your power is running low.

66.     On the website for its Samsung Galaxy S22, which was released on February 25, 2022, the Company marketed the smartphone as "breaks the rules with: nightography camera, ready for anything all-day battery, our fastest processor ever." The website details key features regarding its streaming and processing speed, as follows:

> **Google Duo Live Sharing for virtual watch parties**
> Bring the crew together with Google Duo*. There, you can watch movies together** — streaming high-quality video just like IRL***.

---

[17] https://news.samsung.com/global/new-samsung-galaxy-s22-and-s22-plus-deliver-revolutionary-camera-experiences-day-and-night

Schubert Jonckheer & Kolbe LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

**4nm processor, our fastest chip yet**
Our fastest, most powerful chip ever. That means, a
faster CPU and GPU compared to Galaxy S21 Ultra. It's
an epic leap for smartphone technology.

67.    In a Tom's Guide article,[18] published on June 1, 2022, the author
referenced the S22's "solid performance."

68.    A June 20, 2022 Android Authority article, titled *Samsung Galaxy S22
review: The best, in a small package*,[19] also praised the S22's performance and
design, stating:

> Samsung might have hit the sweet spot for the Galaxy S22.
> It's certainly not too big, but it's not too small, either. This is
> a flagship-tier handset you can use one-handed without
> sacrificing build quality, the cameras, or raw performance. It
> feels like an excellent counterpunch to Apple's domination
> among six-inch flagships; certainly more so than the Galaxy
> S21 did, thanks to the premium upgrades. Even if the
> Samsung Galaxy S22 hasn't changed the smartphone game,
> it's a reassuring sign that smaller Android flagships still
> have a chance.

## CLASS ACTION ALLEGATIONS

69.    Plaintiff brings this action as a class action pursuant to Federal Rule of
Civil Procedure 23(b)(2) and 23(b)(3) on behalf of herself and a proposed Class
defined as follows:

> All persons who purchased a Samsung Device containing the GOS
> application in the State of California and did not agree to or opted out of
> binding arbitration (the "Class").

---

[18] https://www.tomsguide.com/reviews/samsung-galaxy-s22
[19] https://www.androidauthority.com/samsung-galaxy-s22-review-3123026/

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

70.     ***Numerosity Under Rule 23(a)(1).*** The Class is so numerous that the individual joinder of all members is impracticable, and the disposition of the claims of all Class members in a single action will provide substantial benefits to the parties and the Court. Plaintiff, on information and belief, alleges that the Class includes millions of persons.

71.     ***Commonality Under Rule 23(a)(2).*** Common legal and factual questions exist that predominate over any questions affecting only individual members. These common questions, which do not vary among Class members and which may be determined without reference to any Class member's individual circumstances, include, but are not limited to:

a)     Whether Samsung knew or should have known that the performance of the Devices was intentionally being throttling through the GOS app;

b)     Whether Samsung's representations and omissions in advertising and/or labeling are false, deceptive, and misleading;

c)     Whether Samsung had knowledge that its representations and omissions in advertising and/or labeling are false, deceptive, and misleading;

d)     Whether Samsung's representations and omissions in advertising and/or labeling are likely to deceive a reasonable consumer;

e)     Whether Samsung knew or should have known that consumers rely on review websites for their purchasing decisions, which in turn rely on benchmarking applications to rate and describe smartphones;

f)     Whether Samsung engaged in unlawful, fraudulent, or unfair business practices;

g)     Whether Samsung has violated the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200*, et seq*.;

h)     Whether Samsung has violated the Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750*, et seq*.;

**Class Action Complaint**
**Case No. 5:22-cv-01607**                                                    **23**

i)      Whether, because of Samsung's omissions and/or misrepresentations of material facts, Plaintiff and members of the Class have suffered an ascertainable loss of monies and/or property and/or value; and

j)      Whether Plaintiff and members of the Class are entitled to declaratory and injunctive relief.

72.     ***Typicality Under Rule 23(a)(3).*** Plaintiff's claims are typical of the Class members' claims. Samsung's course of conduct caused Plaintiff and Class members the same harm, damages, and losses as a result of Samsung's unlawful conduct. Likewise, Plaintiff and other Class members must prove the same facts in order to establish the same claims.

73.     ***Adequacy of Representation Under Rule 23(a)(4).*** Plaintiff is an adequate Class representative because she is a member of the Class, and her interests do not conflict with the interests of the Class. Plaintiff has retained counsel competent and experienced in complex litigation and consumer protection class action matters such as this action, and Plaintiff and her counsel intend to prosecute this action for the Class benefit and have the resources to do so. Plaintiff and her counsel have no interests adverse to those of the other members of the Class.

74.     ***Superiority.*** The Class can be properly maintained because the above common questions of law and fact predominate over any questions affecting individual Class members. A class action is also superior to all other available methods for the fair and efficient adjudication of this controversy because individual litigation of each Class member's claim is impracticable. Even if each Class member could afford individual litigation, the court system could not. It would be unduly burdensome if thousands of individual cases proceeded. Individual litigation also presents the potential for inconsistent or contradictory judgments, the prospect of a race to the courthouse, and the risk of an inequitable allocation of recovery among those individuals with equally meritorious claims. Individual litigation would increase the expense and delay to all parties and the Courts because it requires

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

individual resolution of common legal and factual questions. By contrast, the class action device presents far fewer management difficulties and provides the benefit of a single adjudication, economies of scale, and comprehensive supervision by a single court.

**FIRST CLAIM FOR RELIEF**

**Violations of the California Unfair Competition Law**

**CAL. BUS. & PROF. CODE § 17200,** *et seq.*

***On Behalf of Plaintiff Martin and the Class***

75.    Plaintiff Martin, individually and on behalf of the Class, incorporates by reference all the allegations contained in the preceding paragraphs of this Class Action Complaint as if fully set forth herein.

76.    Plaintiff Martin brings this claim individually and on behalf of the Class against Samsung.

77.    The California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*, is a California-specific unfair competition statute that protects consumers against unlawful, unfair, misleading, and fraudulent business and advertising practices.

78.    Samsung's actions as alleged herein constitute an "unlawful" practice within the definition, meaning, and construction of California's UCL because Samsung violated California's strong consumer protection and false advertising legislation, including California's False Advertising Law (Bus. & Prof. Code §§ 17500 *et seq.*) and the CLRA (Civ. Code §§ 1750, *et seq.*).

79.    Samsung violated the UCL by utilizing unfair, deceptive, and fraudulent business and marketing practices.

80.    Samsung's "unfair" business practices include:

• Intentionally utilizing GOS to throttle the performance of 10,000 applications, while not throttling the performance popular benchmarking apps;

**Class Action Complaint**
**Case No. 5:22-cv-01607**                                                          **25**

- Utilizing the false statistics garnered from the non-throttled benchmarking to market the Devices as superior in speed and performance; and

- Concealing this material GOS throttling information from website reviewers and consumers so that consumers were unable to make informed purchasing decisions.

81.     Samsung's actions as alleged herein constitute a "fraudulent" practice because, by utilizing false and misleading statistics to market the Devices alleged speed and performance, Samsung's conduct was likely to deceive, and did deceive, consumers. Samsung's failure to disclose GOS throttling constitutes a material omission in violation of the UCL.

82.     As a result of Samsung's unlawful, fraudulent, and unfair conduct, Plaintiff Martin and the Class received an inferior product from that which they were promised. Had Samsung disclosed to Plaintiff Martin and the Class that it was throttling the performance of the Devices to manipulate purchasers into purchasing expensive products that did not in fact function at its claimed superior speed, battery life, and overall performance, Plaintiff Martin and the Class would not have purchased the Devices or would have paid less.

83.     Samsung's deceitful business practices constitute unfair competition. Plaintiff Martin and the Class seek equitable relief and restitution to remedy Samsung's deceptive marketing and advertising.

## SECOND CLAIM FOR RELIEF

### Violations of the Consumer Legal Remedies Act

### CAL. CIV. CODE § 1750, *et seq.*

### *On Behalf of Plaintiff Martin and the Class*

84.     Plaintiff Martin, individually and on behalf of the Class, incorporates by reference all the allegations contained in the preceding paragraphs of this Class Action Complaint as if fully set forth herein.

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

85.    Plaintiff Martin brings this claim individually and on behalf of the Class against Samsung.

86.    The Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 *et seq.,* is a statute enacted to protect consumers involved in a transaction which results in the sale or lease of goods, property, or services against unfair and deceptive business practices.

87.    Samsung is a "person" under Cal. Civ. Code § 1761(c).

88.    Plaintiff Martin and the Class are "consumers" as defined by *Cal. Civ. Code § 1761(d).*

89.    In violation of Cal. Civ. Code §§ 1750 *et seq.*, Samsung has engaged in unfair and deceptive business practices by (a) advertising the Devices with the intent not to sell them as advertised; (b) representing that the Devices had characteristics, uses, benefits, and qualities which they do not have; and (c) representing that the Devices are of a particular standard, quality, and grade when they are not.

90.    Samsung violated the CLRA by:

- Misrepresenting to Plaintiff Martin and the Class that Samsung's Devices had characteristics, uses, and benefits that they did not have, in violation of Cal. Civ. Code § 1770(a)(5);

- Representing to Plaintiff Martin and the Class that the Devices were of a particular standard, quality, or grade, when they were of another in violation of Cal. Civ. Code § 1770(a)(7);

- Advertising goods to Plaintiff Martin and the Class with the intent not to sell them as advertised, in violation of Cal. Civ. Code § 1770(a)(9);

- Manipulating the Devices performance statistics by intentionally not throttling popular benchmarking applications;

- Representing that the Devices speed and performance is equivalent to that of its non-throttled benchmarking applications, which far exceeded the performance of throttled applications; and

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

- Misrepresenting to Plaintiff Martin and the Class that the Devices operated at their marketed speed and performance.

91.     Samsung intentionally provided Plaintiff Martin and the Class with manipulated performance representations, deceiving these reasonable consumers.

92.     Additionally, Samsung took advantage of Plaintiff Martin and the Class's lack of experience and knowledge necessary to detect differences in technical specifications.

93.     Samsung had a duty to disclose its manipulative throttling practices under the CLRA due to its partial representations about the Devices' speed and performance and its exclusive knowledge of material facts about the Devices true speed and performance, which it concealed from the Plaintiff.

94.     Due to Samsung's misrepresentations and omissions, Plaintiff Martin and the Class received an inferior product from that which they were promised. Had Samsung disclosed to Plaintiff Martin and the Class that it was throttling the performance of the Devices to manipulate consumers into buying expensive products that did not in fact function at their claimed superior speed, battery life, and overall performance, Plaintiff Martin and the Class would not have purchased the Devices or would have paid less for them.

95.     Plaintiff Martin and the Class relied on Samsung's misrepresentations and omissions in purchasing the Devices.

96.     Plaintiff Martin, individually and on behalf of the Class, demands judgment against Samsung under the CLRA for injunctive relief.

97.     Pursuant to Cal. Civ. Code § 1782(a), Plaintiff Martin will serve Samsung with notice of its alleged violations of the CLRA by certified mail return-receipt requested. If, within thirty days after the date of such notification, Samsung fails to provide appropriate relief for its violations of the CLRA, Plaintiff Martin reserves her right to amend this Class Action Complaint to seek monetary damages under the CLRA.

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

98.     Notwithstanding any other statements in this Class Action Complaint, Plaintiff Martin does not seek monetary damages in connection with her CLRA claim and will not do so until the applicable thirty-day period has passed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and the Class, requests that the Court order the following relief and enter judgment against Samsung as follows:

A.     An Order certifying the proposed Class under Fed. R. Civ. Proc. 23;

B.     An Order appointing Plaintiff to represent the Class;

C.     A declaration that Samsung engaged in the illegal conduct alleged herein;

D.     An Order that Samsung be permanently enjoined from its improper activities and conduct described herein;

E.     A Judgment awarding Plaintiff and the Class restitution and disgorgement of all compensation obtained by Samsung from its wrongful conduct;

F.     Prejudgment and post-judgment interest at the maximum allowable rate;

G.     An Order awarding Plaintiff and the Class reasonable litigation expenses, costs, and attorneys' fees;

H.     An Order awarding such other injunctive and declaratory relief as is necessary to protect the interests of Plaintiff and the Class; and

I.     An Order awarding such other and further relief as the Court deems necessary, just, and proper.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury for all claims and issues so triable.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

Dated: September 12, 2022       SCHUBERT JONCKHEER & KOLBE LLP

*/s/ Amber L. Schubert*

AMBER L. SCHUBERT (S.B.N. 278696)
ROBERT C. SCHUBERT (S.B.N. 62684)
**SCHUBERT JONCKHEER & KOLBE LLP**
Three Embarcadero Center, Suite 1650
San Francisco, California 94111
Telephone: (415) 788-4220
Facsimile: (415) 788-0161
E-mail:       rschubert@sjk.law
                aschubert@sjk.law

*Counsel for Plaintiff Martin*

---

**Class Action Complaint**
**Case No. 5:22-cv-01607**            **30**